## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

|  |  |  |
|---|---|---|
| LAZAYA KATRINA RAGLAND WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  4:18-cv-00407-JHE |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION[1]

Plaintiff Lazaya Katrina Ragland Wilson ("Wilson") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner ("Commissioner") of the Social Security Administration's final decision denying her application for a period of disability and disability insurance benefits ("DIB").  (Doc. 1).  Wilson timely pursued and exhausted her administrative remedies.  This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).  Upon review of the record and the relevant law, the court is of the opinion that the Commissioner's decision is due to be **AFFIRMED**.

### I. Factual and Procedural History

Wilson protectively filed an application for a period of disability and DIB on June 1, 2015, alleging she became unable to work on April 22, 2015.  (Tr. 96, 146-47).  On September 9, 2015, the Commissioner initially denied Wilson's application.  (Tr. 98).  On October 7, 2015, Wilson requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 89).  Wilson attended the

---

[1]  In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 12).

hearing on November 16, 2016, at which the ALJ received testimony from a vocational expert ("VE"). (Tr. 32-52). After the hearing, the ALJ found that Wilson was not under a disability at any time through the date of the May 10, 2017 decision. (Tr. 25). Wilson then requested review of the ALJ's decision by the Appeals Council. (Tr. 143-44). On January 9, 2018, the Appeals Council denied Wilson's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Following denial of review by the Appeals Council, on March 14, 2018, Wilson filed a complaint in this court seeking reversal and remand of the Commissioner's decision. (Doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. It is "more than a scintilla, but less than a preponderance." *Id*. This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v.*

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or Social Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

*Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for DIB and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to DIB, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v).

The Commissioner must determine in sequence:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals the criteria contained in one of the Listings of Impairments;

(4) whether the claimant can perform his or her past work; and

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

(5) whether the claimant is capable of performing any work which exists in significant numbers in the national economy.

*Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). At Step 5, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience. *Doughty*, 245 F.3d at 1278

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Wilson met the insured status requirements of the Social Security Act through December 31, 2019, and that she had not engaged in substantial gainful activity since April 22, 2015, the alleged onset date of her disability. (Tr. 13). At Step Two, the ALJ found that Wilson has the following severe impairments: status post myocardial infarction with triple coronary artery bypass grafting; cardiomyopathy; hypertension; type I diabetes mellitus with retinopathy; cervical and lumbar degenerative disc disease; obesity, and depression. (*Id.*).

At Step Three, the ALJ found Wilson does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14).

Before proceeding to Step Four, the ALJ determined Wilson's RFC, which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Wilson has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except that the climbing of ladders, ropes, or scaffolding would be precluded. The climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling are limited to frequent. Reaching with the right upper extremity in all planes (e.g., waist level

4

and overhead) is limited to frequent. Exposure to extreme cold and heat, as well as to humidity, excessive vibration, and pulmonary irritants is limited to occasional. Exposure to hazardous machinery and unprotected heights is to be avoided entirely. The claimant is limited to understanding, remembering, and carrying out of simple instructions and that activity can [be] sustained for two hours and with normal mid-morning, lunch, and mid-afternoon breaks can be sustained over an eight hour day. Decision-making should be limited to occasional. Changes in the work setting should be infrequent in nature, which is less than occasional. Interactions with the public, coworkers, and supervisors should also be limited to occasional.

(Tr. 16-17).

At Step Four, the ALJ determined Wilson is unable to perform any past relevant work. (Tr. 24). At Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Wilson could perform. (*Id.*) Therefore, the ALJ determined Wilson has not been under a disability and denied Wilson's claim. (Tr. 25)

## V. Analysis

Wilson contends that the ALJ erred by: (1) failing to afford proper weight to the opinion of consulting psychologist/counselor Dr. Jack Bentley, Jr.; (2) failing to consider Wilson's work history in weighing Wilson's subjective complaints; (3) failing to consider the side effects of Wilson's medications when evaluating her symptoms and functional limitations; (4) failing to analyze Wilson's complaints of fibromyalgia under the criteria set forth in Social Security Ruling ("SSR") 12-2p; (5) making a finding that Wilson retained an RFC to perform light work in a manner that failed to comply with SSR 96-8a; and (6) reaching a decision that was not supported by substantial evidence. (Doc. 8 at 22-43).[4]

---

[4] Wilson's arguments as to each of these broad topics consist almost entirely of blockquotes from other opinions, with no application of the cited law to the facts of this case. As other courts have noted, the absence of any sort of development makes it difficult to determine the precise contours of the issues she raises. *See, e.g., White v. Berryhill*, No. 4:17-CV-00259-TMP, 2018 WL 4335533, at *8 (N.D. Ala. Sept. 11, 2018); *Bell v. Colvin*, No. 4:14-CV-523-RDP, 2015 WL 4656362, at *9 (N.D. Ala. Aug. 6, 2015). Furthermore, Wilson's reply brief, (doc. 10), is a verbatim restatement of portions of her brief in support of disability. It neither responds to the Commissioner's arguments nor sheds additional light on her claims.

## A. The ALJ Properly Weighed Dr. Bentley's Opinion

Wilson argues that the ALJ failed to properly weigh the opinion of Dr. Bentley, a consulting psychologist/counselor. (Doc. 22 at 8). Wilson also argues for the application of a "stricter standard" to review the medical opinions by experts chosen by the Commissioner, and directs the court to the Seventh Circuit's decision in *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995). (Doc. 8 at 22-28).

Generally an ALJ gives more weight to the opinion of a "treating source," 20 C.F.R. § 404.1527(c)(2), which is a physician, psychologist, or other "acceptable medical source," 20 C.F.R. §§ 404.1527(a)(2). A treating physician's opinion generally is entitled to more weight, and an ALJ must give good reasons for discounting a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(2)[5]; SSR 96-2p, 1996 WL 374188 (July 2, 1996). An ALJ may discount a treating physician's opinion when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. § 404.1527(c). "The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician." *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 Fed. App'x 875, 877 (11th Cir. 2013). To facilitate a meaningful review, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefore." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

Wilson argues that the court should employ a "degree of suspicion" standard allegedly adopted by the Seventh Circuit in *Wilder* to evaluate the opinions of examining physicians

---

[5] 20 C.F.R. § 404.1527 applies to claims filed, as this one was, before March 27, 2017. This opinion refers to the version of the regulation effective August 24, 2012, to March 26, 2017.

appointed by the Commissioner. (Doc. 8 at 22). In a recent unpublished decision, the Eleventh Circuit "decline[d] . . . . to adopt the standard set forth by the Seventh Circuit in *Wilder*." *Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019); *see also Hand v. Soc. Sec. Admin., Comm'r*, 786 F. App'x 220, 226 (11th Cir. 2019) ("it's not clear to us that *Wilder* adds much to our existing precedent . . . ."). Instead, contrary to Wilson's contention that "[t]he Eleventh Circuit has not adopted a standard for reviewing or rejecting the opinion of an examining medical expert selected by the Commissioner," (doc. 8 at 22), the Eleventh Circuit pointed to a case in which it *has* "articulated [its] own standard for reviewing the opinions of agency-appointed consulting physicians" in *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, (11th Cir. 2004). *Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019). *Crawford* holds that a one-time examining physician's opinion is not entitled to great weight. 363 F.3d at 1160. As the Eleventh Circuit recently noted, existing circuit precedent is sufficient "to review whether an ALJ's decision is consistent with relevant legal standards and supported by substantial evidence," because "[b]inding precedent already requires ALJs to 'state with particularity the weight given to different medical opinions and the reasons therefore . . . .'" *Hand*, 786 F. App'x at 226 (quoting *Winschel*, 631 F.3d at 1179).

The ALJ "assign[ed] little weight to consultative examiner, Dr. Bentley" explaining that Dr. Bentley's "opinion is not only inconsistent with the objective evidence of record but also the claimant's own reports and [Dr. Bentley's] findings." (Tr. 23). Substantial evidence in the record supports the ALJ's decision. Dr. Bentley's opinion is based on an August 13, 2015 examination of Wilson. (Tr. 550). Dr. Bentley opined that "[Wilson] would have a severe restriction in her ability to sustain complex or repetitive work-related activities. [Wilson's] impairment level for simple tasks would fall in the moderate to marked range. She would have difficulty sustaining her

concentration when communicating with coworkers and supervisors." (Tr. 551). Wilson reported to Dr. Bentley that she was "experiencing increased depression, anxiety, periodic panic attacks, crying spells, mood swings, irritability, loss of self-esteem and social withdrawal over the last two years." (Tr. 550). Wilson also reported "difficulty sustaining concentration" and "completing even simple tasks at home." (*Id.*). Dr. Bentley made findings that conflicted with his conclusion that Wilson "had difficulty sustaining her concentration." Dr. Bentley found "[t]here were no limitations in [Wilson's] receptive or expressive communication skills," and "[Wilson] easily performed serial 7's and 3's from 100."[6] (Tr. 551). In addition, Dr. Bentley found that "[Wilson] did not exhibit any limitations in her tertiary and immediate memories." (*Id.*).

Dr. Bentley observed that Wilson "enjoy[s] cooking and spending time with her children and the neighborhood children," and she spends "much" of her time watching television and has "many friends in her neighborhood." (Tr. 551). Dr. Bentley also noted that Wilson is able to complete her [activities of daily living] without assistance," (Tr. 551). Dr. Bentley's observations about Wilson's daily activities seem inconsistent with his conclusion Wilson was unable to perform work-related activities.

Wilson has not identified any evidence in the record that supports Dr. Bentley's conclusions. (Doc. 8 at 22-28). Undercutting Wilson's argument, the record supports the ALJ's finding that the objective evidence in the record is inconsistent with Dr. Bentley's findings. On June 9, 2015, Dr. Darryl Prime at Southern Cardiovascular Associates, P.C. noted that Wilson reported "a very depressed mood and is crying all the time." (Tr. 384). Dr. Prime diagnosed Wilson as depressed and prescribed her Xanax. (Tr. 387). On July 6, 2015, Wilson was seen by

---

[6] The Serial Sevens and Serial Threes tests are both tasks that are designed to measure attention and concentration. Donald E. Wiger, *The Psychotherapy Documentation Primer*, 91 (3d ed. 2012).

Dr. Jason Ayres at the Gadsden Regional Medical Center ("GRMC") who reported, "No anxiety No depression, No mania." (Tr. 440). On August 24, 2015, a few days after her examination with Dr. Bentley, Wilson was seen by Dr. Vijayaprasad Tummala who reported that Wilson denied a "[d]epressed mood." (Tr. 554). On December 4, 2015, Wilson was seen by Dr. Christopher Johnson at GRMC for complaints of an anxiety attack. (Tr. 618). Dr. Johnson observed that Wilson was alert and "[c]ooperative, appropriate mood & affect, normal judgment, non suicidal," and he advised Wilson to continue to take the prescription Ativan as needed. (Tr. 621). Wilson's subsequent medical records do not show Wilson sought treatment for mood disorders. (*See* tr. 683-95 (Southside Medical Clinic records from Sept. 28, 2015 to April 4, 2016), 726-66 (GRMC records from April 28, 2016 to May 3, 2016), 770-83 (Southern Cardiovascular records from November 12, 2015 to June 21, 2016), 785-93 (Southside Medical Clinic records from May 10, 2016 to August 10, 2016), 815-26 (GRMC records for November 9, 2016)). Given that Wilson did not seek treatment for her mood disorders, the record supports that Wilson's mood disorders were well-controlled with medication.

Additionally, in contrast to Dr. Bentley's opinion, other consultants found that Wilson could work with certain limitations. On September 2, 2015, the state agency psychologist, Dr. Amy Cooper, reviewed Wilson's record and reported that Wilson could work with certain limitations. (Tr. 116). On October 17, 2015, a medical consultant, Dr. Janet Telford-Tyler, reviewed Wilson's mental RFC and reported that Wilson could work with certain limitations. (Tr. 595-96). The ALJ considered Dr. Cooper's recommended limitations and incorporated them in the RFC. (*Compare* tr. 15-16 *with* 116 ,595-96). Thus, substantial evidence supports the ALJ's finding affording little weight to Dr. Bentley's opinion.

**B. The ALJ Did Not Err by Failing to Weigh Wilson's Work History.**

Wilson also argues that the "ALJ . . . failed to give proper weight to [her] excellent work history" in the ALJ's credibility finding. (Doc. 8 at 28-29 (emphasis omitted)). Wilson does not directly attack the ALJ's credibility determination; rather, Wilson argues that the ALJ's failure to make a specific finding regarding her "excellent work history" invalidates the rest of the ALJ's credibility determination. (*Id.*). To support her argument, Wilson cites to cases from other circuits which have found that a claimant's prior "good work record" justifies an inference of substantial credibility. *See, e.g., Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015); *Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980). Wilson, however, does not cite to any provision in the Social Security Act, the Regulations, or agency's sub-regulatory policies supporting her position that the ALJ must discuss or even consider work history as a favorable factor. (*See* doc. 8 at 28-29). Additionally, as another district court in this circuit observed, "'the Eleventh Circuit has not had occasion to rule on the issue' of whether an ALJ's failure to consider a claimant's 'lengthy and consistent work record' in evaluating a claimant's credibility is erroneous." *Mahon v. Comm'r of Soc. Sec.*, No. 8:16-cv-1462-T-JSS, 2017 WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017) (quoting *Lafond v. Comm'r of Soc. Sec.*, No. 6:14-CV-1001-ORL-DAB, 2015 WL 4076943, at *9 (M.D. Fla. July 2, 2015)). "In other words, excellent work history alone may be insufficient to enhance a claimant's credibility, but it does not necessarily result in a remand when it is not considered by the ALJ as long as the credibility determination is supported by substantial evidence." *Brothers v. Berryhill*, No. 4:18-cv-01557-JEO, 2019 WL 3555064, at *4 (N.D. Ala. Aug. 5, 2019). The ALJ is not required to "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . enable[s] [the reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

Wilson has failed to show that the ALJ's credibility finding was erroneous. Therefore, Wilson's argument that the ALJ erred by failing to consider Wilson's work history is unpersuasive. *See Brothers*, 2019 WL 3555064, at *4 (holding that the ALJ did not err in "in determining Plaintiff's credibility without reference to his prior work ethic."); *Evans-Sweny v. Comm'r of Soc. Sec.*, No. 2:18-cv-56-FtM-DNF, 2019 WL 949302, at *7 (M.D. Fla. Feb. 27, 2019) ("While Plaintiff is correct that an excellent work history may enhance a claimant's credibility, it does not necessitate remand in this case where the ALJ based her credibility finding on a careful analysis of the medical record and Plaintiff has failed to show the credibility finding was otherwise erroneous.").

### C. The ALJ Appropriately Considered the Side Effects of Wilson's Medication.

Wilson argues that the ALJ failed to consider the side effects of her medications. (Doc. 8 at 29-31). Wilson's entire argument is that she "testified that the medications cause her to have headaches" and "ALJ Merchant failed to consider the side effects of the medications on [Wilson]." (Doc. 8 at 29). The remainder of Wilson's briefing consists of extended excerpts from *Waters v. Berryhill*, No. CV 316-002, 2017 WL 694243 (S.D. Ga. 2017), and *Denson v. Berryhill*, 4:17-cv-1428-CLS, 2018 U.S. 3970498 (N.D. Ala. Aug. 20, 2018), two unpublished district court cases in which a court found an ALJ's failure to evaluate the side effects of medication resulted in reversal and remand. (*See* doc. 8 at 29-32). Wilson does not explain how either case relates to the case before this court. (*See id.*).

The ALJ noted "[Wilson] stated that her medications caused sleepiness, headaches, and dizziness." (Tr. 17). The ALJ found "that [Wilson's] medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, [Wilson's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of the record . . . ." (Tr. 17). In reaching

his decision, the ALJ discussed Wilson's physician's management of Wilson's medications. (*See* tr. 18-21). The ALJ also observed that on one occasion, in July of 2015, Wilson complained of dizziness. (Tr. 18).

The record does not support Wilson's contention her medication caused limiting side effects. On the contrary, on July 6, 2015, Dr. Stephen Higgens of the GRMC noted that Wilson denied any headaches, and attributed her "episodes of dizziness" with "accelerated hypertension." (Tr. 435-36). Other records also do not show evidence of side effects from Wilson's medications or complaints about her medications. (*See, e.g.*, tr. 424 (Southside Medical Clinic ("SMC") July 13, 2015, record showing no complaints), 439-53 (GRMC July 1 - 6, 2015, record showing no complaints), 566 (SMC July 22, 2015, record stating that Wilson is having dizziness "likely due to her blood pressure being low."), 815-26 (GRMC November 9, 2016, record showing no complaints about medications)). Moreover, Wilson does not identify any specific records that support her argument. (*See* doc. 8 at 29-32). Therefore, substantial evidence supports the ALJ's findings regarding Wilson's medications. *See Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 949 (11th Cir. 2006) (rejecting the plaintiff's argument that the ALJ failed to consider her medication's side effects as a separate non-exertional impairment, noting that "the record includes no evidence that [she] consistently complained to her doctors of any side-effects"); *see also Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (finding that the ALJ's determination that the side effects of medication did not present a significant problem and was supported by substantial evidence where the claimant did not complain of side effects, except that she believed one medication might be causing headaches, and the record did not disclose any concerns about side effects from the doctors who examined and treated the claimant.). It was Wilson's burden at the administrative level to demonstrate that side effects of her medication made her unable to work.

*See Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366-67 (11th Cir. 2010). Having failed to do so, she cannot now claim the ALJ erred.

### D. The ALJ Properly Analyzed Wilson's Fibromyalgia Claim Under SSR 12-2p.

Wilson argues that the ALJ did not properly analyze Wilson's fibromyalgia as required under SSR 12-2p. (Doc. 8 at 32-38). At Step Two, the ALJ did not find Wilson's fibromyalgia to be a severe impairment because "the available medical evidence does not satisfy the requirements of SSR 12-2p, and therefore the claimant's fibromyalgia cannot be medically determined from any acceptable medical source." (Tr. 13-14).

Wilson does not specifically explain how the ALJ erred. Instead, she provides six pages of argument consisting almost entirely of block quotes of cases remanding disability claims based on fibromyalgia. (*See* doc. 8 at 32-38). Wilson does not make any specific references to the record or arguments based upon the quoted cases. (*See id.*). It appears that Wilson is arguing that the ALJ: failed to articulate why he did not afford weight to certain evidence in evaluating whether Wilson suffers from a medically determinable impairment ("MDI") of fibromyalgia, did not examine Wilson's longitudinal medical history, focused improperly on objective evidence, and did not afford proper weight to Wilson's subjective complaints. (*See id.*).

"[Fibromyalgia] is a complex medical condition characterized primarily by widespread pain in the joints, muscle, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR-12p, 77 Fed. Reg. 43640-01, 43641 (July 25, 2013). SSR 12-2p governs the assessment of whether a claimant suffers from a MDI of fibromyalgia. *Id.* "Once an MDI is established, [the ALJ] then evaluate[s] the intensity and persistence of the [claimant's] pain or any other symptoms

and determine[s] the extent to which the symptoms limit the [claimant's] capacity for work." *Id.* at 43643.[7]

SSR 12-2p states the ALJ will "find that a [claimant] has an MDI of [fibromyalgia] if the physician diagnosed [fibromyalgia] and provides the evidence" that matches one of two sets of criteria, "and the physician's diagnosis is not inconsistent with the other evidence in the [claimant's] case record." *Id.* 43641. The first set of criteria requires the claimant to demonstrate: (1) "[a] history of widespread pain"; (2) "[a]t least 11 positive tender points on physical examination"; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." *Id.* The second criteria requires the claimant to show: (1) "[a] history of widespread

---

[7] At the second step of the evaluation process, the Eleventh Circuit's "pain standard . . . guides the ALJ's evaluation when a claimed disability is fibromyalgia . . . ." *Bailey v. Soc. Sec. Admin., Comm'r*, No. 18-14887, 2019 WL 5787955, at *5 (11th Cir. Nov. 6, 2019).

> The pain standard requires the claimant show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); see also 20 C.F.R. § 404.1529(a) – (b). If a claimant testifies as to her subjective complaints of disabling pain and other symptoms . . . the ALJ "must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (quotation marks omitted).

*Bailey*, 2019 WL 5787955, at *5.

"[T]he symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR-12p, 77 Fed. Reg. 43640-01, 43644 (July 25, 2013). Therefore, "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of [fibromyalgia]." *Id.* at 43642. "If objective medical evidence does not substantiate the [claimant's] statements about the intensity, persistence, and functionally limiting effects of symptoms," the ALJ will "consider all of the evidence in the case record, including the [claimant's] daily activities, medications or other treatments the [claimant] uses, or has used, to alleviate symptoms; the nature and frequency of the [claimant's] attempts to obtain medical treatment for symptoms; and statements by other people about the [claimant's] symptoms." *Id.* at 43643.

pain"; (2) repeated manifestations of six or more fibromyalgia symptoms or co-occurring conditions"; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* at 43642. "A licensed physician . . . is the only acceptable medical source who can provide" evidence of an MDI. *Id.* at 43621. "The evidence must document that the physician reviewed the [claimant's] medical history and conducted a physical exam." *Id.* The ALJ "will review the physician's treatment notes to see if they are consistent with the diagnosis of [fibromyalgia], determine whether the [claimant's] symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the [claimant's] physical strength and functional abilities." *Id.*

The ALJ determined that Wilson did not have an MDI of fibromyalgia. (Tr. 14). The ALJ found there was evidence that other ailments could have caused Wilson's symptoms and signs; Wilson's records do not show "a history of widespread pain . . . that has persisted for at least three months; and . . . [Wilson] does not have at least eleven positive tender points on each side of the body documented by a physician . . . ." (Tr. 14). The record contains substantial evidence supporting the ALJ's findings. On May 24, 2015, Wilson was seen for treatment at GRMC complaining of chest and abdominal pain. (Tr. 281). Dr. Ayres noted that Wilson had a history of fibromyalgia but wrote that the condition was "Resolved." (Tr. 282). Dr. Ayres examined Wilson's musculoskeletal system and noted "Normal range of motion, No tenderness." (Tr. 284). At her other medical appointments running through November 9, 2016, Wilson's providers noted that her musculoskeletal system was normal. (Tr. 385 (June 9, 2015), 404 (May 6, 2015), 412 (July 1, 2015), 440 (July 6, 2015), 483 (July 21, 2015), 532 (Aug. 4, 2015), 554 (Aug. 24, 2015), 588 (Aug. 31, 2015), 621 (Dec. 4, 2015), 732 (May 3, 2016), 773 (June 21, 2016), 815 (Nov. 9, 2016)).

Wilson reproduces the entire analysis of a legal decision where the court remanded a social security matter back to the ALJ for failing to articulate why it did not afford weight to a physician's opinion when evaluating whether the claimant suffered from a MDI of fibromyalgia. (Doc. 8 at 32-22 (citing *Cartwright v. Berryhill*, No. 17-60251-CIV-WILLIAMS, 2018 WL 1795361, at *1 (S.D. Fla. Mar. 30, 2018)). Wilson does explain which evidence she contends the ALJ improperly weighed, nor does she explain how *Cartwright* applies to her case. (Doc. 8 at 32-38). Wilson does not identify any objective evidence that establishes an MDI under either set of criteria. (*Id.*). Substantial evidence supports the ALJ's finding that Wilson's medical evidence does not satisfy either of the criteria in SSR 12-2p, and as a result, that Wilson did not have an MDI of fibromyalgia.[8]

### E. The RFC is Supported by Substantial Evidence and Complies with SSR 96-8p.

The RFC describes the type of work a claimant is able to perform "despite the limitations caused by his or her impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) (citing 20 C.F.R. § 404.1545(a)). The ALJ found that Wilson retained the RFC to perform light work with several postural, exertional, and environmental limitations. (Tr. 16-17). Wilson argues that the ALJ's RFC determination is not supported by substantial evidence, and does not comply with SSR 96-8p. (Doc. 8 at 38-41). The Commissioner argues that the ALJ provided a detailed RFC finding that conforms with SSR 96-8p. (Doc. 9 at 22-23). The Commissioner is correct.

SSR 96-8p governs the ALJ's assessment of a claimant's RFC. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). To assess a claimant's RFC, the ALJ "must first identify the

---

[8] To the extent Wilson argues the ALJ improperly evaluated her capacity to perform light work due to limitations imposed by fibromyalgia, the ALJ's finding that fibromyalgia was not an MDI eliminated the need to specifically attribute limitations to fibromyalgia. Furthermore, Wilson does not allege the ALJ failed to account for any specific limitation at all.

individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.* SSR 96-8p further states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.
>
> . . . .
>
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.
>
> . . . .
>
> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

*Id.* at *7.

The Eleventh Circuit has held that even where "the ALJ could have been more specific and explicit in his findings" the ALJ's determination satisfies the requirements of SSR 96-8p if the ALJ considered all of the evidence. *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007). Additionally, the ALJ is not required to "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... enable[s] [the reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211.

It is clear that the ALJ considered the entirety of the record in assessing Wilson's RFC. The ALJ specifically stated that he assessed Wilson's RFC "based on all of the evidence" and "all

[of Wilson's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on" 20 C.F.R. § 404.1529. (Tr. 17). The ALJ also stated that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. [§] 404.1527" and Wilson's subjective complaints. (Tr. 17).

The ALJ discussed the medical evidence in the record, as well as Wilson's hearing testimony and subjective complaints. (Tr. 17-23). The ALJ did not discuss every doctor visit in the record, yet the ALJ specifically detailed the medical records as they related to Wilson's severe impairments, medical opinions in the record, Wilson's longitudinal history, Wilson's daily activities, and her testimony and other statements regarding her alleged limitations. (*Id.*). As discussed by the ALJ, Wilson's physicians documented that her medical issues, i.e., post myocardial infarction, diabetes, degenerative disc disease, depression, and obesity, did not preclude Wilson from work at the light level of exertion with additional limitations. (Tr. 18-23; *see* tr. 383-87, 521, 551-52, 585-89, 683, 815-26). The ALJ also specifically explained his decision to afford little weight to the opinion of Dr. Bentley, the Certificate of Return to Work or School, or the third party function report. (Tr. 23). The ALJ complied with SSR 96-8p by considering all of the relevant evidence to assess Wilson's RFC. *See Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (Holding that the ALJ fully considered the claimant's limitations where, "Following [the SSR 96-8p] rubric, the ALJ fully discussed and evaluated the medical evidence, [the claimant's] testimony, and the effect each impairment has on [the claimant's] daily activities"); *Freeman*, 220 F. App'x at 960 ("[T]he ALJ complied with SSR 96–8p by considering [the claimant's] functional limitations and restrictions and, only after he found none, proceeding to express her residual functional limitations in terms of exertional levels.").

Wilson appears to argue that the ALJ's RFC determination is not supported by substantial evidence because the ALJ was required to rely on a physical capacities assessment from a treating or examining physician. (Doc. 8 at 39-40 (citing *Thomason v. Barnhart*, 344 F.Supp.2d 1326 (N.D. Ala. 2004), and *Coleman v. Barnhart*, 264 F.Supp.2d 1007 (S.D. Ala. 2003)). Wilson's argument is unpersuasive. "[T]he pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC." *Castle v. Colvin*, 557 Fed. App'x 849, 853-54 (11th Cir. 2014) (citing 20 C.F.R. § 404.1546(c)). An ALJ considers medical source opinions to determine a claimant's RFC, but he or she is not required to base an RFC on a physician's opinion. 20 C.F.R. § 404.1527(d)(2); *see Castle*, 55 F. App'x at 853-54 (holding that substantial evidence supported the ALJ's RFC finding even though the ALJ rejected a treating physician's opinion, and the record contained no other physician assessment regarding claimant's ability to work).

Wilson also argues that this case is similar to *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987), a case in which the Eleventh Circuit held that substantial evidence did not support the Commissioner's finding that a claimant could perform a reduced range of light work and a full range of sedentary work. (Doc. 8 at 40-41). Wilson provides no substantive argument showing why the facts of her case are analogous to *Walker*. (*See id.*). And contrary to Wilson's argument (*see* doc. 8 at 41), as discussed above, the ALJ's RFC findings are not mere "conclusions without analysis." Therefore, she is not entitled to remand on this basis.

### F. The ALJ Posed a Complete Hypothetical to the VE and Properly Relied on the VE's Testimony

Wilson argues that the ALJ erred by not accurately presenting Wilson's impairments to the VE. (Doc. 8 at 41-42). Specifically, Wilson argues that the hypothetical question that the ALJ

posed to the VE was improper because the question failed to include unspecified impairments Wilson attributes to depression, anxiety, and mood disorders. (*Id.*).

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). "[T]he ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported." *Yates v. Comm'r of Soc. Sec.*, 706 Fed. App'x 588, 593 (11th Cir. 2017). The ALJ found that Wilson's symptoms related to depression were alleviated by medications. (Tr. 22). As discussed above, the ALJ also found that Dr. Bentley's opinion of anxiety and mood disorder warranted "little weight." (Tr. 23; *see supra* V.A.). Based on these findings, the ALJ also was not required to include Wilson's allegations of depression, anxiety, and mood disorders in the hypothetical. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (holding that the ALJ did not err by failing to include alleged impairments in a hypothetical question posed to the VE where the alleged impairments "were either not supported by [the claimant's] medical records or were alleviated by medication.").

The ALJ's hypothetical question was appropriate. The ALJ described a work environment to the VE for Wilson where she would be: limited to light work with additional postural, exertional, environmental, and instructional limitations; afforded certain regular breaks three times during an eight-hour work day; limited to occasional decision-making; provided a work setting that only infrequently changed; and restricted to only occasional interaction with the public. (Tr. 49). The ALJ asked the VE whether Wilson could perform past work or other available work. (*Id.*). The VE stated that Wilson would not be able to perform her past work, but could perform other light unskilled work. (*Id.*). The ALJ then asked the VE what work Wilson could perform if restricted to a light and unskilled setting and if Wilson's subjective limitations were believed regarding her

need for additional breaks or chronic absenteeism. (Tr. 50-51). The VE responded that Wilson could not find a job if she needed additional breaks or missed more than one day per month. (*Id.*). The VE's responses provided substantial evidence to support the Commissioner's denial of benefits in light of the ALJ's determination that Wilson could perform light work with additional limitations. *See Ingram*, 496 F.3d at 1270 (holding that the VE's response to the ALJ's hypothetical question that the claimant could perform other work constituted substantial evidence to supporting the denial of benefits where the ALJ's determined the claimant could perform sedentary work.). Therefore, the ALJ did not err by failing to include other (unspecified) impairments in his hypothetical to the VE.

## VI. Conclusion

Based on the foregoing, the decision of the Commissioner of Social Security denying Wilson's claim for a period of disability and DIB is **AFFIRMED** and this action is **DISMISSED WITH PREJUDICE**. A separate order will be entered.

DONE this 16th day of March, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE